LITTLER MENDELSON, P.C.
A. Michael Weber
Barbara A. Gross
Diana R. Nance
900 Third Avenue
New York, New York  10022
Tel:  212.583.9600
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIEAN DELANEY, on behalf of himself and other similarly situated,<br><br>               Plaintiff,<br><br>     v.<br><br>GEISHA NYC, LLC d/b/a JAPONAIS, MIAE LIM, LESTER BURGHER RICHARD WAHLSTEDT and JEFFREY BEERS,<br><br>               Defendants. | No. 09 Civ. 1458 (WHP) (THK)<br><br>ECF Case |

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

---

TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................... 1

II.  STATEMENT OF FACTS ................................................................................. 3

    A.   Facts Relating To Tipped Employees ...................................................... 4

    B.   New York State Department of Labor Investigation of Japonais' Pay
        Practices ................................................................................................. 7

III. ARGUMENT ................................................................................................... 8

    A.   PLAINTIFF HAS NOT MET THE STANDARD FOR
        CONDITIONALLY CERTIFYING A COLLECTION
        ACTION UNDER 29 U.S.C. § 216(b) ...................................................... 8

        1.   Declarations Submitted by Plaintiff and Opt-Ins Should Be
                Disregarded and Establish that Conditional Certification is
                Inappropriate ............................................................................. 9

        2.   Members Of The Putative Class Are Not "Similarly Situated" .............. 12

        3.   Plaintiff Has Not Identified A Common Policy Or Practice
                 That  Resulted In A Violation Of The FLSA's Minimum Wage
                Provision .................................................................................. 14

        4.   Individual Analyses Predominate and Render Conditional
                Certification Inappropriate .......................................................... 16

        5.   Plaintiff Has Not Demonstrated That Similarly Situated
                Employees  Desire to Opt-in ....................................................... 20

        6.   A Collective Action Is Not Appropriate Since The
                Defendants Are Not  A Joint Employer ....................................... 21

    B.   PLAINTIFF'S PROPOSED NOTICE SHOULD BE REJECTED ..................... 22

IV.  CONCLUSION ............................................................................................... 24

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459 (S.D.N.Y. 2008) ................... 9, 24

*Ayres v. 127 Rest. Corp.*, 12 F. Supp. 305 (S.D.N.Y. 1998)................................................. 14

*Barfield v. New York City Health & Hospitals Corp.*, 2005 WL 3098730
(S.D.N.Y. Nov. 18, 2005) ...................................................................................... 10

*Belcher v. Shoney's Inc.*, 927 F. Supp. 249 (M.D. Tenn. 1996) ................................... 23

*Bowens v. Atlantic Maintenance Corp.*, 546 F.Supp.2d 55 (E.DN.Y. 2008) ........................ 23

*Cash v. Conn Appliances*, 2 F.Supp.2d 884 (E.D. Tex. 1997) ...................................... 21

*Chan v. Sung Yue Tung Corp.*, 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007)............................ 15

*Chowdhury v Duane Reade, Inc.*, 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007)...................... 24

*Chung v. New Silver Palace Rest. Inc.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002)..................... 14

*Davis v. B&S, Inc.*, 38 F. Supp. 2d 707 (N.D. Ind. 1998)........................................... 14

*Diaz v. Elecs Boutique of Am, Inc.*, No. 04-CV-0840, 2005 U.S. Dist. LEXIS
30382 (W.D.N.Y. Oct. 17, 2005).............................................................................. 18

*Dole v. Continental Cuisine, Inc.*, 751 F. Supp. 799 (E.D. Ark. 1990) ....................... 15

*Dreyer v. Altchem Environmental Servs., Inc.*, 2007 U.S. Dist. LEXIS 71048
(D.N.J. Sept. 25, 2007) ......................................................................................... 10

*Dybach v. Florida Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).........8, 20-21

*Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 WL 4546100 (D.N.J. Dec. 19, 2007)...................... 9

*Hallissey v. America Online, Inc.*, C.A. No. 99-3785, 2008 WL 465112 (S.D.N.Y.
Feb. 19, 2008) .......................................................................................................... 23

*Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2d Cir. 1999)............................................ 22

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)......................................... 9

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)............................................... 8

*Jimenez v. Lakeside Pic-N-Pac, L.L.C.*, 2007 WL 4454295 (W.D. Mich. Dec. 14,
2007) ....................................................................................................................... 9

*Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986) .................................... 10

*Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294 (6th Cir. 1998) ............... 16

*Krueger v. New York Telephone Co.*, 1993 WL 276058 (S.D.N.Y. 1993).................. 24

*Lance v. Scotts Co.*, C.A. No. 04-5270, 2005 WL 1785315 (N.D. Ill. Jul. 21,
2005) ....................................................................................................................... 21

*Masson v. Ecolab, Inc.*, 2005 WL 2000133 (S.D.N.Y. 2005) ...................................... 24

*Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216 (D. Conn. 2003) ...................... 16

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*People v. Ngan Gung Corp.*, No. 402708/95 (Supreme Ct., N.Y. County, Nov. 13, 1995) ................................................................................................................ 14

*Prizmic v. Armour, Inc.*, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ...................................... 8

*Richards v. Computer Sciences Corp.*, 2004 WL 2211691 (D. Conn., Sep. 28, 2004) ................................................................................................................... 10

*Robinson v. Dolgencorp, Inc.*, 2006 WL 3360944 (M.D. Fla. 2006) ......................................... 16

*Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-CV-770, 2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 22, 2006) ..................................................................................... 20

*Rosen v. Roeckitt & Colman, Inc.*, 77 Fair Emp. Prac. Cas. (BBA) 370 (S.D.N.Y. 1994) .................................................................................................................. 23

*Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 U.S. Dist. LEXIS 52568 (S.D.Tex. July 9, 2008) ......................................................................................... 18

*Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264 (D. Min.. 1991) ........................................ 21

*Sjoblom v. Charter Communications, LLC*, 2007 WL 4560541 (W.D. Wis. 2007) ................... 11

*Soler v. G & U, Inc.*, 568 F. Supp. 313 (S.D.N.Y. 1983) ......................................................... 21

*Wajcman v. Inv. Corp. of Palm Beach*, 2008 U.S. Dist. LEXIS 21939 (S.D. Fla. Mar. 20, 2008) .................................................................................................... 15

*White v. KPCAR, Inc.*, C.A. No. 6:05-1317, 2006 WL 1722348 (M.D. Fla. June 20, 2006) ............................................................................................................... 20


**STATUTES**

FLSA § 216(b) ......................................................................................................... 16

18 U.S.C. §§ 2721-2725 ......................................................................................... 24

29 U.S.C. § 203(m) .............................................................................................. 4, 13

29 U.S.C. § 206 ...................................................................................................... 13

NY GBL § 399-h(2)(a) (2009) ................................................................................ 24

NY Lab. Law § 203(d) ............................................................................................ 24

## I.     PRELIMINARY STATEMENT

Plaintiff Adriean Delaney and the seven opt-in participants, former servers, lounge servers, bartenders, and a host at Japonais, an upscale Japanese-fusion Restaurant located at 111 18th Street in New York City ("Japonais" or the "Restaurant"), allege principally that they were not paid the proper minimum wage under the Fair Labor Standards Act ("FLSA") because they were forced to share tips with service captains—who they allege are members of management— under Japonais' tip-out arrangement.[1]   Although the servers frequently received hundreds of dollars each night, due in no small part to the efforts of the service captains whose assistance enabled them to service more tables at a time, Plaintiff contends that Japonais' tip-out policy violated the FLSA because, in addition to their service and customer related duties, the captains had some unspecified quasi-management duties.  Plaintiff makes this allegation despite a recent investigation of Japonais' pay practices by the New York State Department of Labor ("NYSDOL"), after which the NYSDOL determined no action was necessary regarding service captains' inclusion in the tip-out pool.  (*See* Declaration of Sandy Park, dated July 13, 2009 ("Park Decl."), ¶ 18).[2]

Additionally, although Plaintiff purported to file the Complaint in this matter on February 18, 2009, "individually and on behalf of all others similarly situated," it is not even entirely clear what class he seeks to represent, as he states that he seeks to represent all "tipped employees."  Specifically, it is not clear whether the term "tipped employees" refers to those positions at the Restaurant that receive tips directly from customers, which would include only servers, lounge servers, and bartenders, or also to those positions that receive portions of tips

---

[1] Plaintiff also alleges violations of New York Labor Law, which are not at issue in this motion, as any class treatment of such claims is governed by Fed. R. Civ. P. 23, not FLSA § 216(b).
[2] All declarations submitted by Defendants in opposition to the instant motion, which are referred to herein, are attached as exhibits to the Declaration of A. Michael Weber, Esq., dated July 14, 2009.

from the Restaurant's server tip-out pool.. Moreover, Plaintiff's proposed notice is addressed to "all non-managerial tipped employees of Japonais," a group that would include the service captains that Plaintiff asserts are not similarly situated to Plaintiff and the opt-in Plaintiffs. (*See* Declaration of Denise A. Schulman, dated June 26, 2009 ("Schulman Decl.") Ex. 1).

The proposed notice then confusingly also makes reference to the right to make a claim by all former hourly employees of the restaurant. *Id.* As discussed below, servers and bartenders are the only employees who receive tips directly from customers at the Restaurant. Servers retain 66% of their tips for lunch shifts and 53% for dinner shifts. (Park Decl. ¶ 8). Bartenders who work at the public bar (as opposed to service bartenders, who make drinks for customers dining in the dining room or lounge areas of the Restaurant) participate in a separate "bar only" tip-out pool, in which they tip-out 25% of their tips to the barbacks and 5% of food sales from the bar to food runners. (*Id.*). Plaintiff and the opt-in participants were all employed for relatively short periods of time as servers, lounge servers, or bartenders, except for Tram Dang, who also worked as a host before becoming a server. Hosts, such as opt-in Plaintiff, Tram Dang, are not tipped by customers, nor do they share in the tip-out pool at the Restaurant. As such, Ms. Dang did not participate in the tip-out pool until after she transferred positions from host to server. Additionally, opt-in Plaintiffs Benjamin Weber and Sheree Hovsepian were bartenders, who participated in the "bar only" tip-out pool, which did not include any service captains. Consequently, as demonstrated further herein, Plaintiff has failed to meet the requirements for conditional certification to set forth a proposed collective group that is similarly situated and that was subjected to a common policy or practice that violated the FLSA. Thus, his motion for conditional certification should be denied.

Moreover, Plaintiff has found only a handful of other potential collective action plaintiffs

since filing his complaint nearly six months ago and even though the New York State Department of Labor ("NYSDOL") began its investigation 2007.  Consequently, Plaintiff now seeks the gleam of a "court approved" notice of an FLSA action in the hopes of making his claims seem more attractive, yet certification of a collective action and court-approved notice to a potential class is not an appropriate method to determine whether others wish to join a collective action.  As such, this Court should not permit Plaintiff to use a judicially approved notice to lend credence to claims that, to date, have not generated interest or support from the overwhelming majority of the putative collective plaintiffs.

Finally, as explained below, Plaintiff bases his motion for conditional certification chiefly on hearsay, hyperbole, and misrepresentations.  Under any standard for certifying a collective action, there must be some credible evidence showing that putative class members were victims of a common policy or plan that violated the FLSA.  Here, when the facts are separated from the fictions drafted by Plaintiff's counsel, Plaintiff fails to meet this burden.  The goal of allowing employees who are owed wages to recover them is best served by proceeding apace to resolve plaintiffs' claims individually, rather than continuing to litigate collective and class action issues that do not benefit the actual plaintiffs.

For these reasons, conditional certification of Plaintiff's FLSA claims as a collective action is simply not appropriate, and the Court should deny Plaintiff's motion in its entirety.

## II.    STATEMENT OF FACTS

On July 19, 2006, Defendant Geisha NYC LLC opened Japonais in New York City. Individual Defendants Miae Lim, Lester Burgher, Richard Walhstedt, and Jeffrey Beers have varying ownership interests and involvement in the Restaurant.  (Park Decl. ¶ 2).  Japonais hired

its first food service employees in June 2006, and provided intensive, in-depth training from approximately June 19 to July 19 regarding the special attributes of the Restaurant  (Park Decl. ¶ 3).  Japonais opened its doors to the paying public on July 24, 2006.  (*Id.*).

### A.    Facts Relating To Tipped Employees

Since its opening, Japonais has employed a team approach to servicing its customers.  While many restaurants provide service with just waiters and busboys, Japonais utilizes a much broader team, each with specific service tasks, including service captains, servers, food runners, bussers, assistant bussers, service bartenders, and barbacks, (collectively, the "Service Employees").  (*Id.* ¶ 4).  The Restaurant's Service Employees are well compensated.  During their training period, all Service Employees receive, at minimum, the applicable minimum wage required by federal and state law, absent any deduction for the tip credit.  (*Id.* ¶ 5).  After their training period is complete, Service Employees begin receiving gratuities from customers, as well as an hourly wage from Japonais.  (*Id.*).  The FLSA allows Japonais to take a "tip credit" against the minimum wage by including in its calculation of wages a portion of the amount that the Service Employees receive in tips.  29 U.S.C. § 203(m).  With tips and wages, the restaurant's tipped employees receive well in excess of the minimum wage.

All of the Service Employees share in the tips that are left by customers upon payment of their checks, and which are collected by the servers.  (*Id.* ¶ 8).  Contrary to Plaintiff's assertions, captains are *not* managers; rather, they are the liaisons between Restaurant management and the Service Employees.  (*Id.* ¶ 13; Declaration of Roberto Araujo, dated July 9, 2009 ("Araujo Decl."), ¶ 6).  In fact, service captains spend the majority of their time performing customer service duties, which include those of a traditional server, those of a host, and any other service required to ensure that customers have an exceptional dining experience.  (Park Decl. ¶ 14; Araujo Decl., ¶ 5).

Japonais' style of service and philosophy plays a big role in the particular importance of captains at the Restaurant. (Park Decl. ¶ 14). With two different kitchens and two executive chefs, the Restaurant is essentially two restaurants combined into one so that customers have more options from which to choose. (*Id.*). Due to its unique setup and menu offerings, servers need to be able to explain the Restaurant concept, and ensure that the food is served continuously, rather than in courses, as in more traditional restaurants. (*Id.*). The captains help coordinate the food from both kitchens for the servers. (*Id.*; Araujo Decl., ¶ 5). In addition to their contributions to traditional service, which include seating the diners, taking orders, serving food and wine, making sure that the tables were being fully serviced, notifying the kitchen of any special requirements, such as food allergies or substitutions, and troubleshooting and fielding customer complaints and requests, captains are also required to adjust for server errors. (*Id.*; Declaration of Sueshi Maeda, dated May 20, 2009 ("Maeda Decl."), ¶ 6; Declaration of Bate Ning, dated May 21, 2009 ("Ning Decl."), ¶ 5; Declaration of Jung Ki Park, dated June 3, 2009 ("Jung Ki Park Decl."), ¶ 7; Declaration of Juliana Kenworthy ("Kenworthy Decl."), dated June 3, 2009, ¶ 7; Araujo Decl. ¶¶ 5, 6).

Due to the extensive and unique nature and unfamiliarity of our menu and its ingredients, guests may change their minds because they did not fully understand what they ordered or how to consume it. (Park Decl. ¶ 14). Captains are there to remedy any errors by servers, accommodate changes from guests, and communicate them properly to the kitchen and upper management. (*Id.*; Araujo Decl., ¶¶ 5, 6). Thus, service captains are an integral part of the service experience at Japonais, as their service of and interaction with customers enhances the customers' dining experience and often increases the gratuities left for the servers. (Park Decl. ¶ 14).

At opening, Japonais employed a tip pooling system.  (Maeda Decl., ¶ 6; Ning Decl., ¶ 8; Jung Ki Park Decl., ¶ 6).   Under that system, each Service Employee was assigned a point value, and on a given night, the points of all Service Employees on duty were aggregated for a gross point total.  (Park Decl. ¶ 6).  Each night, all tips paid by diners were pooled and divided by the gross point total, resulting in a dollar value for each point.  (*Id.*).  An individual's share of the tip pool for the night was calculated by multiplying the individual's point value by that night's dollar value for each point.  (*Id.*).   However, within approximately one month of opening, the servers approached Restaurant management to propose that the Restaurant adopt a tip-out policy instead.  (Maeda Decl., ¶ 6; Ning Decl., ¶ 8; Jung Ki Park Decl., ¶ 8; Park Decl., ¶ 7).

The servers felt that a tip-out arrangement would better reward servers who had busier nights, worked harder on a particular shift, or simply had more generous customers.  *Id.* Consequently, the servers suggested that, rather than have the servers combine their tips before distributing them amongst all of the Service Employees, each individual server would "tip-out" 47% of his or her tips from the dinner shift and 34% of his or her tips from the lunch shift to remaining members of the staff and would retain the remainder of his or her own tips.[3]  (Maeda Decl., ¶¶ 6, 8; Ning Decl., ¶¶ 7-8; Park Decl., ¶ 8).   Management agreed to institute this voluntary tip-out policy.  (Maeda Decl., ¶ 6; Ning Decl., ¶ 8; Park Decl., ¶ 7).   During the interview process, prospective new hires are informed of the Restaurant's tip-out policy and are also given a consent form which they are asked to sign to indicate their agreement with the tip-out arrangement before beginning work.  (Maeda Decl., ¶ 10; Park Decl. ¶ 9).

Although service captains, food runners, bussers, assistant bussers, service

---

[3] The lower tip-out percentage is used for the lunch shift because there are no barbacks or service bartenders working the lunch shift.

bartenders, and barbacks do not contribute tips to the pool (because they do not receive tips directly from customers), they do benefit from the tip-out arrangement.   (Park Decl. ¶ 8). Servers take their portion of tips home in cash each night, and the tips tipped-out to the other Service Employees are paid out with the employees' paychecks.[4]  (Maeda Decl., ¶ 8; Ning Decl., ¶ 7; Park Decl. ¶ 8; Araujo Decl. ¶ 8).

   All employees are instructed to clock in and out on the Restaurant's "Aloha" computer system. (Maeda Decl., ¶ 11; Ning Decl., ¶ 10; Jung Ki Park Decl., ¶ 9; Kenworthy Decl., ¶ 8; Araujo Decl., ¶ 9).   Upon clocking out, each server must "check out."  (Maeda Decl., ¶ 10; Ning Decl., ¶ 11; Kenworthy Decl., ¶ 8).  To check out, Aloha totals the cash sales, credit card sales, and credit card tips each server received that night, and each server then records the amount of cash tips he or she received that night.  *Id.*  Servers collect and hold their tips, together with the Restaurant's sales income, throughout their shift.  During the check out process, each server remits the money for his or her total cash sales to the Restaurant, then calculates the 47% (or 34%) tip-out of both his or her cash and credit card tips for the shift.  (Kenworthy Decl., ¶ 8).

### B. New York State Department of Labor Investigation of Japonais' Pay Practices

   As previously noted, the NYSDOL recently examined the payroll practices at Japonais.  In fact, in November 2008, the NYSDOL investigator specifically noted that the Restaurant's service captains are part of the tip-out policy and discussed the issue with Director of Operations Sandy Park and then-General Manager David Patten.  (Park Decl. ¶ 18).  In April

---

[4] As is common in the restaurant industry, the servers' and bartenders' paychecks are regularly quite small.  This occurs because the Restaurant must deduct income tax, employee social security tax, and employee Medicare tax based on employees' earnings from both regular wages and tips.  Because the Restaurant does not take possession of the servers' and bartenders' tips, deductions are taken from the servers' and bartenders' hourly wage portion of income.  In anticipation of this result, the IRS created an ordering system of how the withholdings should be allocated.  *See* Internal Revenue Service, Publication 15, Employer's Tax Guide, at 13.

2009, the NYSDOL concluded its investigation, and took no action against the Restaurant with respect to the service captains' participation in the tip-out pool. (Park Decl. ¶ 18). As such, Plaintiff's challenges to the inclusion of the service captains in the tip-out policy is unavailing.

## III.   ARGUMENT

### A.   PLAINTIFF HAS NOT MET THE STANDARD FOR CONDITIONALLY CERTIFYING A COLLECTION ACTION UNDER 29 U.S.C. § 216(b)

Section 216(b) of the FLSA authorizes a plaintiff to file suit on behalf of "other employees similarly situated," but only if such employees "consent in writing." 29 U.S.C. § 216(b). In other words, employees must affirmatively "opt in" to an FLSA collective action. While "district courts have the discretion, in appropriate cases, to facilitate notice to potential plaintiffs," court-ordered notice is not automatic. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989) (emphasis added). Before granting judicial imprimatur to an attorney's effort to shop a lawsuit to other potential plaintiffs, the court must "satisfy itself that there are other employees of the defendant-employer who desire to 'opt-in' and are 'similarly situated' . . . ." *Dybach v. Florida Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Hoffman-LaRoche, Inc.*, 493 U.S. at 167. Plaintiff's motion to circulate a single notice of pendency should be denied because, among other reasons, there is no evidence that similarly situated employees desire to opt in.

Whether the Court elects to intervene in this proceeding as Plaintiff requests, is a matter committed to the Court's discretion. Such discretion should be exercised only if Plaintiff demonstrates that he and potential class members are "similarly situated." *Hoffman-LaRoche, Inc.*, 493 U.S. at 169; *Prizmic v. Armour, Inc.*, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006). At the initial stage of a litigation, prior to the completion of discovery, plaintiffs can meet this burden only by making a factual showing that they and potential plaintiffs together were

victims of a common policy or plan that violated the law. *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Unsupported assertions of widespread violations are insufficient to meet this standard. *See, e.g., Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 WL 4546100, at *2 (D.N.J. Dec. 19, 2007).

Also, contrary to Plaintiff's assertions, courts may consider the merits of the underlying claim on a motion for conditional certification under the FLSA. *See Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) ("Where a plaintiff fails to carry this [evidentiary burden of establishing she is similarly situated to the other proposed members of the putative collective action] or where a defendant employer shows ... that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice or postpone the issue pending further discovery and motion practice."). Although it is not the Court's role to *decide* the cases on the merits at this point, the Court has a responsibility to assure that there is some factual basis for plaintiffs' claims of class-wide violations of the law before authorizing notice to any putative class. *Jimenez v. Lakeside Pic-N-Pac*, L.L.C., 2007 WL 4454295, at *3 (W.D. Mich. Dec. 14, 2007). Here, no such factual basis exists and, consequently, Plaintiff's motion should be denied in its entirety.

### 1.   Declarations Submitted by Plaintiff and Opt-Ins Should Be Disregarded and Establish that Conditional Certification is Inappropriate

Had Plaintiff's counsel drafted individual declarations describing the experience and knowledge of Plaintiff and each individual opt-in, they would have exposed the lack of commonality among their claims. Recognizing this problem, Plaintiff's counsel instead drafted a form declaration that was only minimally altered for each opt-in. Certainly, without even the opportunity to depose the Plaintiff and the opt-in participants concerning the duplicative nature

of their declarations, this motion is premature.   Accordingly, the declarations submitted by Plaintiff and the opt-in participants should be stricken, or disregarded by the Court in its determination of Plaintiff's motion.

To the extent that Plaintiff seeks conditional certification for all employees who received tips, it is clear that the prospective collective plaintiffs are not similarly situated. It was only servers who turned the tip-out portion of their tips in to the Restaurant at the end of their shifts for inclusion in the tip-out pool that included service captains.   At all times, therefore, only servers went home each night with the amount of their tips, other than what they tipped-out to, or shared with, their co-Service Employees.

These declarations must be disregarded to the extent that they are not based on personal knowledge, or offer inadmissible hearsay or conclusory allegations.   *See e.g.*, *Richards v. Computer Sciences Corp.*, 2004 WL 2211691, at *1-2 (D. Conn. Sep. 28, 2004) (adopting Rule 56(e)'s standard for determining whether to strike or disregard affidavits submitted in support of a § 216(b) motion for conditional certification); *Barfield v. New York City Health & Hospitals Corp.*, 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) (holding that anecdotal hearsay is ***insufficient*** to establish the existence of a widespread practice); *Dreyer v. Altchem Environmental Servs., Inc.*, 2007 U.S. Dist. LEXIS 71048, at *10-11 (D.N.J. Sept. 25, 2007) (discounting an affidavit that contained only "unsubstantiated conclusory statements   .   .   . coupled with rote recitations") (citations omitted).

In fact, the declarations are largely just a litany of allegations as to what the declarants claim others experienced at Japonais, rather than their own personal experiences.   This evidence is inadmissible hearsay. *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (noting an affidavit with conclusory statements was improperly considered because it "contains

no information to indicate a basis in personal knowledge for the affiant's conclusory statement"); *see also Sjoblom v. Charter Communications, LLC*, 2007 WL 4560541 (W.D. Wis. 2007) (striking affidavits in wage-hour action where affidavits not based upon affiants' personal knowledge, constitute or rely on hearsay, contain conclusory allegations, speculation and unsupported personal beliefs or directly and materially conflict with affiants' deposition testimony).   As such, Plaintiff is left with completely unsupported allegations which are insufficient to support the instant motion

Moreover, the declarations actually contradict themselves in many regards, showing that there was no alleged common policy or plan here that violated the FLSA, and undermining any claim that members of the proposed collective class are similarly situated.  Most glaringly, despite the otherwise largely boilerplate language that has been cut and pasted into each of the declarations, the declaration of Plaintiff does not state that he was subject to the tip-out policy against his will.  This is consistent with the declarations submitted by Defendants, which explain that this was a voluntary policy, put into effect at the request of the servers at Japonais.  While Plaintiff and other opt-in declarants state that they were required to share tips with managers in a percentage determined by management (Delaney Decl. ¶ 4), or that the managers collected all of the tips and distributed them as they saw fit (Weber Decl. ¶ 17), the declaration of opt-in Plaintiff Stephanie Powell states that she stopped receiving tips in her paycheck in late 2006, and instead was required to give managers 50% of her tips each night (a number not supported by the actual Restaurant records in any event).  (Powell Decl. ¶ 19).

Also, some of Plaintiff's declarants state that they sometimes witnessed the alleged managers serving food or taking orders, (Powell Decl. ¶ 8, Delany Decl. ¶ 7), while others state that they never witnessed this (Duverger ¶ 8), thus showing that these servers did not have a clear

understanding of the role of the service captains.  In fact, Plaintiff and the opt-in declarants each state that certain "managers" were illegally part of the tip-out pool, naming not only service captains, but also individuals who were managers and did not participate in the tip-out pool. (Park Decl. ¶ 10).

In contrast, the declarations of Sandy Park and Roberto Araujo, a former server, who is now a service captain, are based on personal knowledge and clearly explain the roles played by the service captain, including the fact that service captains cannot make personnel decisions, but can only inform employees of such decisions made by management.  (Park Decl. ¶¶ 16, 17; Araujo Decl. ¶ 7).  Additionally, all of the hiring and firing decisions alleged in the declarations are not based on personal knowledge and are hearsay.

Another example of how Plaintiff's declarations contradict themselves, is that Plaintiff asserts that he was paid less than the minimum wage during *some* of the time he worked for Japonais (Delaney ¶ 2), while others state that they were not paid the minimum wage throughout the time they were employed at Japonais (Duverger Decl., ¶ 2), thus establishing that there is no common claim here that minimum wage was not paid to all tipped employees.

While Defendants have not pointed out all the ways in which these declarations are deficient, Defendants have amply demonstrated Plaintiff's failure to provide declarations on which this Court can rely.  Accordingly, Defendants request that the Court strike or disregard the declarations submitted by Plaintiff and the opt-in participants.  To the extent that the Court determines that it will rely on the declarations of Plaintiff and opt-in participants in deciding Plaintiff's motion, Defendants seek leave to first depose them and submit supplemental briefing prior to the Court's determination.

### 2.      Members Of The Putative Class Are Not "Similarly Situated"

Plaintiff's sole federal claim in his Complaint, and his only basis for invoking

jurisdiction in this Court, is for minimum wages under 29 U.S.C. § 206.  Although there is no dispute that the Service Employees' combined wage and tip income far exceeded the federal minimum wage of $6.55 per hour, Japonais took a tip credit as permitted by 29 U.S.C. § 203(m). Plaintiff alleges that Japonais was not entitled to a tip credit because it distributed portions of the tips to employees who did not "customarily and regularly receive tips." (Pl. Br. at 4.)  Plaintiff does not argue that all non-exempt employees were denied minimum wage.  Rather, he asserts only that the Restaurant's "tipped employees" were denied minimum wage.  In fact, because the Restaurant compensated servers in a manner unlike any other employees – as these employees kept 53% of the tips they earned (66% at lunchtime), while 47% (34% at lunchtime) of their tips were placed in a tip pool and distributed to certain other Service Employees – Plaintiff cannot establish that all "tipped employees" are similarly situated.  Notably, not even bartenders, like opt-in plaintiffs Weber and Hovsepian, who are the only other employees of the Restaurant who received tips directly from customers, were compensated in this way, because in the "bar tip-out pool," which did not include *any* of the service captains that are the alleged source of Plaintiff's complaints, bartenders tipped-out 25% of their tips only to the barbacks and 5% of food sales from the bar went to food runners.  (Park Decl. ¶ 8).  Thus, for example, opt-in plaintiff's Weber, Hovsepian and Dang (in her position as a host) could not be proper members of any proposed class here.

Plaintiff and the opt-in participants are also an unrepresentative sample of the overly broad group of hourly employees they seemingly seek to represent (which would include employees that are clearly not appropriate participants in the tip-out policy, such as dishwashers) and their motion is devoid of any showing that all hourly employees employed by Defendants within the last three years were subject to any common policy or practice that violated federal

law.  (See Schulman Decl., Ex. 1, ¶ 2.)   Plaintiff's failure to demonstrate a factual nexus between the experiences of the individual members of the proposed class, or to even clearly define who he intends to include in the proposed class, is fatal to his motion for conditional certification.

### 3.  Plaintiff Has Not Identified A Common Policy Or Practice That Resulted In A Violation Of The FLSA's Minimum Wage Provision

Plaintiff has not established that the Restaurant's tip-out policy constituted an improper retention of tips, which occurs where an employer exercises control over a portion of employees' tips. *Davis v. B&S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998).  Rather, Plaintiff conclusorily asserts that the service captains at Japonais, incorrectly called "managers" by him in his Complaint, were not permitted to receive tips.  However, even the cases that Plaintiff cites to in a failed effort to support this proposition, state otherwise, or are otherwise inapposite to Plaintiff's allegations.  For example, in *Chung v. New Silver Palace Rest. Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002), this Court specifically noted that the sharing of tips with service captains can be legal, depending upon the circumstances.  (*Citing People v. Ngan Gung Corp.*, No. 402708/95, at 4 (Supreme Ct., N.Y. County, Nov. 13, 1995).

Moreover, the Court determined in *Chung* that the managers, or "black jackets," in that case were not eligible to share in tips under New York State law, because they were part owners and officers of the restaurant who also wielded very broad management authority.  *Id.* Most importantly, a state court had already found this practice to be illegal, but the restaurant flagrantly continued the practice of sharing tips with these "black jackets."  *Id.*  Plaintiff does not even attempt to allege that the service captains at Japonais were part-owners or officers of the Restaurant, or that they had the kind of broad authority alleged in the *Chung* case.

In another case cited by Plaintiff, *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305,

307-308 (S.D.N.Y. 1998), the Court determined that defendant had violated New York State law by sharing tips with an employee during the period *after* he was promoted to the position of General Manager from senior service captain.  Plaintiff inexplicably cites to *Wajcman v. Inv. Corp. of Palm Beach*, 2008 U.S. Dist. LEXIS 21939, at *13 (S.D. Fla. Mar. 20, 2008), for support, a case involving card dealers, not restaurant employees, where the Court simply determined that summary judgment was inappropriate where there was no "record of any industry practice or custom pertaining to tipping of floor supervisors, more commonly known as 'pit bosses,' on the cardroom floor which would allow the court to assess whether this discrete category of cardroom employee meets the statutory definition of 'tipped employee.'"

        In contrast, this Court has stated that sharing tips with service captains is not illegal.  *See Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at *20  (S.D.N.Y. Feb. 1, 2007). This Court has even determined that managers with supervisory responsibilities and autonomy beyond those of service captains, and even with financial interests in a restaurant, are not necessarily barred from participating in a tip pool, where they also served customers.  *Id.* at *19-*20.  The Court has made clear that even if Plaintiff could show that the service captains were actually called "managers," this would be irrelevant to the determination of their right to legally receive tips at Japonais.  *Id.*

        Moreover, while Plaintiff argues that the service captains were listed on a schedule he attaches as "Maitre D'/Managers," the schedule includes both managers, such as the Restaurant's General Manager, who did not participate in the tip-out pool, as well as non-managers, such as Maitre D's.  Maitre D's have been determined to be customarily tipped positions.  *See e.g. Dole v. Continental Cuisine, Inc.,* 751 F. Supp. 799 (E.D. Ark. 1990) (upholding mandatory tip pool where servers tipped out solely to a maitre D' who received no tips directly from customers, and

whose responsibilities included setting up dining room, greeting and seating customers, serving first drink to customers, and assisting servers and serving customers as needed); *see also Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 300 (6th Cir. 1998) (holding that hosts at restaurant could participate in tip-pool because their occupation was one involving frequent interaction with customers in an industry in which undesignated tips were common).

### 4.   Individual Analyses Predominate and Render Conditional Certification Inappropriate

Even assuming, *arguendo*, that the tip-out policy was improper, collective certification is inappropriate because Plaintiff cannot establish that other employees are similarly situated within the meaning of § 216(b).   To find members of a class similarly-situated, "the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination on the merits . . . ."   *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 200 (D. Conn. 2003).

Where, as here, individual plaintiffs must prove their own claims though separate mini-trials, a collective action does not preserve judicial resources and is not the most efficient method to adjudicate plaintiffs' claims.   *See, e.g., Robinson v. Dolgencorp, Inc.*, 2006 WL 3360944, at *6 (M.D. Fla. 2006) ("[W]here a collective action would not serve the interests of judicial economy, plaintiffs should not be permitted to request court-supervised notice as a tool for drumming-up business.").   In such cases, courts should not implement the collective action mechanism under § 216(b) by facilitating class notice to potential plaintiffs.

Here, the structure of the tip-out policy is such that the circumstances of the putative collective class members' claims will vary too widely to conclude that they are similarly situated to each other or to any other "tipped employees" or other hourly employees.   Where individual inquiries will predominate, as is the case here, collective action treatment is inappropriate.

Consequently, Plaintiff's motion for conditional certification and authorization of class notice should be denied.

As stated above, Plaintiff alleges that Japonais was not entitled to take a tip credit pursuant to § 203(m) because it included service captains in the tip-out policy and service captains are allegedly members of management.   However, significant differences exist with respect to the distribution of the Service Employees' tips.   The percentage of tips allocated among Service Employees varied greatly, and tips received by servers were put into the tip-out, while bussers, assistant bussers, food runners, barbacks, service bartenders, and service captains contributed no tips at all.   (Park Decl. ¶ 8).   In fact, the allocation of the server's 47% tip-out amount is different depending on whether the server worked in the dining room or in the lounge/ mezzanine area of the Restaurant.   (*Id.*)

Moreover, the percentage tipped-out was different depending on whether the server worked during the lunch shift or the dinner shift.   Additionally, another factor that prevents collective treatment of Plaintiff's claims is whether a Service Employee's participation in the tip-out policy was voluntary.   As set forth above, several of the opt-in participants who submitted declarations in support of Plaintiff's motion aver that their tips were put into the tip pool "against their will."   (*See* Duverger Decl., ¶¶ 3, 5; Weber Decl., ¶ 3; Feld Decl., ¶ 3; Powell Decl., ¶ 3), while Plaintiff conspicuously makes no such claim (*See* Delaney Decl.).   And yet all of the servers who were employed when the tip-out policy was instituted, and who have submitted declarations in opposition to Plaintiff's motion, state that the tip-out policy was the choice of the servers themselves, and that new hires sign a consent form regarding their participation in the tip-out pool.   (Maeda Decl., ¶¶ 6, 10; Ning Decl., ¶ 8; Park Decl., ¶ 8).

The determination of the individual assertions regarding this issue would be

essential, as with a voluntary tip-out pool employees may lawfully share their tips with anyone they so choose. *See Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 U.S. Dist. LEXIS 52568, at *75, (S.D.Tex. July 9, 2008) (holding that the FLSA and its legislative history support that "[e]mployees may share tips with other workers who are not customarily and regularly tipped if they do so free from any coercion whatever and outside any formalized arrangement or as a condition of employment," and that the question of employer coercion should be an objective inquiry) (internal quotations omitted). In *Roussell*, for instance, although the plaintiffs demonstrated that all of the "opt-ins *deposed* were subjected to some form of coercion by managers," the defendant presented witnesses controverting their testimony. *Id.* at 92-93. Consequently, the court determined that the plaintiffs' claims could not properly proceed as a collective action, since "the question of whether managers coerced servers into sharing tips with [certain employees], under the particular facts of this case, . . . does appear to require individualized defenses." *Id.* at 93.

Thus, the analysis of whether Japonais lawfully took a tip credit from an employee's wages will vary depending on: (1) when the employee worked, (2) with whom the employee worked, and (3) the position the employee held, (4) the amount of tips the employee contributed into the tip pool, and (5) whether the employee consented to his or her participation in the tip-pool.

Because these individual inquiries will predominate over any questions common to the entire group, the potential class members are not similarly situated within the meaning of § 216(b) and this Court should deny Plaintiff's motion to circulate a notice of pendency. *See, e.g., Diaz v. Elecs Boutique of Am, Inc.*, No. 04-CV-0840, 2005 U.S. Dist. LEXIS 30382, at *12-19 (W.D.N.Y. Oct. 17, 2005) (denying motion for facilitation of notice of FLSA claims where

circumstances of individual claims differed, requiring a highly fact-specific and detailed inquiry).

**5.    Plaintiff Has Not Demonstrated That Similarly Situated Employees Desire to Opt-in**

Before a Court may grant conditional certification and authorize the circulation of notice, plaintiffs must produce evidence demonstrating that there are other similarly situated employees "who desire to 'opt-in'" to the litigation." *Dybach*, 942 F.2d at 1567 (emphasis added). "[C]ertification of a collective action and notice to a potential class is not an appropriate method to determine whether there are others who desire to join the lawsuit." *Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-CV-770, 2006 U.S. Dist. LEXIS 23272, at *8, 10, 15 (M.D. Fla. Mar. 22, 2006) (declining to allow opt-in notice because plaintiffs' identified no individuals who desired to join the lawsuit). Evidence of other employees who desire to opt in may be based on affidavits or consents to join the lawsuit, but plaintiffs' belief and "unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of a collective action and notice to a potential class." *Id.* at *8 (internal quotations omitted).

In the instant case, only seven employees, other than the named Plaintiff, have opted to participate. Plaintiff cannot identify any other person who wants to opt-in to his action. Nowhere in the declarations submitted by Plaintiff and the opt-in participants, is there any mention of a single other potential plaintiff that would want to join this collective action. Even if Plaintiff could somehow make the requisite showing of an allegation of a common scheme that violated the FLSA and affected similarly situated individuals, this would show only that joinder of a group could possibly be appropriate. *See White v. KPCAR, Inc.*, C.A. No. 6:05-1317, 2006 WL 1722348 (M.D. Fla. June 20, 2006) (denying conditional certification; finding permissive joinder best method for adjudication). This is because, after nearly six months of litigation, and a NYSDOL investigation that began two years ago, Plaintiff has presented absolutely no evidence, and has not even stated any facts to support the assertion, that any other potential class

members desire to opt in to this action.   To the contrary, Defendants have submitted the declarations of numerous employees stating that they believe that they were always properly paid and received far in excess of the hourly minimum wage.

As this action involves just one restaurant in Manhattan (and a number of individually named defendants), which opened just three years ago, there very well may be no other plaintiffs who would want to join this action, beyond the current opt-in participants. Moreover, the burden is on Plaintiff to show that there are other putative plaintiffs who would want to join this otherwise small group, so that Plaintiff cannot engage in a fishing expedition at the expense of Defendants.   Therefore, Plaintiff fails to demonstrate any basis for the Court to permit this litigation to proceed as a collective action. *See Soler v. G & U, Inc.,* 568 F. Supp. 313, 318 (S.D.N.Y. 1983) ("[C]irculation of notice at this time 'would change[] the charter of the [Court] from that of an adjudicator of disputes brought to [it] to that of a kind of town crier, ringing the tocsin to awaken those who may be sleeping on their rights'"); *Lance v. Scotts Co.,* C.A. No. 04-5270, 2005 WL 1785315, at *8-9 (N.D. Ill. Jul. 21, 2005) (denying motion for conditional certification where plaintiff failed to produce evidence that other employees shared concerns) (citing *Cash v. Conn Appliances,* 2 F.Supp.2d 884, 897 (E.D. Tex. 1997) and *Dybach,* 942 F.2d at 1567-8.   Indeed, issuing notice in such circumstances runs counter to the Court's "responsibility to avoid 'stirring up' of litigation through unwarranted solicitation." *Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 266-67 (D. Min.. 1991).

### 6.      A Collective Action Is Not Appropriate Since The Defendants Are Not A Joint Employer

Plaintiff has not presented any legal or factual basis to hold the individual Defendants jointly liable with Japonais for any alleged common policy or plan that violated the FLSA.   In order for all of the Defendants to be held responsible as a joint employer, Plaintiff

would have to allege sufficient facts to show that all of the Defendants had the power to control the individuals who would be invited to opt-in to this action, by providing admissible evidence, that each defendant had: (1) the power to hire and fire all of the potential opt-in employees, (2) supervised and controlled work schedules or conditions of employment, (3) determined rates and methods of payment and (4) maintained employment records. *See Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2d Cir. 1999).   There is no evidence whatsoever that the individual Defendants were sufficiently involved in labor issues to be deemed a joint employer.   In fact, the only allegations by Plaintiff concerning the individual Defendants are contained in the conclusory allegation in the Complaint that these individuals exercised sufficient control. (Compl., ¶ 6).   There is simply no basis in law or fact to deem all of Defendants to be joint employers in this case.   Therefore, a single collective action against all Defendants should not be certified.

### B.   PLAINTIFF'S PROPOSED NOTICE SHOULD BE REJECTED

If the Court determines that judicial notice is appropriate for any group, the Court should exercise its broad discretionary authority to manage that communication and ensure that it is not used to stir up litigation unnecessarily.   Defendants have several objections to the notice proposed by Plaintiff and request the opportunity to be heard with respect to the content of such notice, if the Court (as opposed to Plaintiff) defines the putative class.

The proposed Notice is addressed to "All non-managerial, tipped employees of Japonais"; however, it later states that any "hourly employee for Japonais at any time between _____ 2006 to the present" has the "right to participate in this lawsuit." (Schulman Decl., Exh. 1).   Thus, the Notice inaccurately reads as though anyone ever employed by Japonais as an hourly employee can participate in this lawsuit, regardless of whether they were part of the tip-out policy.

The content of the Notice needs also to be more balanced, summarizing not only Plaintiff's claims against Defendants, but also Defendants' defenses. *See Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 253 (M.D. Tenn. 1996) (authorizing notice that included statement of employer's affirmative defenses). Any notice should also include a statement that, as opt-in plaintiffs, individuals who file consents to opt-in will be subject to discovery obligations, which may include providing deposition or trial testimony under oath, responding to document requests and/or responding to requests for information. *Rosen v. Roeckitt & Colman, Inc.*, 77 Fair Emp. Prac. Cas. (BBA) 370, 373 (S.D.N.Y. 1994).

Prospective opt-in plaintiffs also should be warned that they could be liable for Defendants' costs in defending the case if Defendants ultimately prevail in this matter. *See* Fed. R. Civ. P. 54(d). Prospective opt-in plaintiffs should further be required to sign the form under penalty of perjury. In addition, the notice requires opt-in claimants to mail the consent form to Plaintiff's counsel—not to the Court. Courts regularly reject this proposed procedure. *See Bowens v. Atlantic Maintenance Corp.*, 546 F.Supp.2d 55, 84-85 (E.DN.Y. 2008); *Hallissey v. America Online, Inc.*, C.A. No. 99-3785, 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008). Finally, Plaintiff seeks to have the Order date back three years from the date of the Complaint, which was filed in February 2009, yet Japonais did not open to the public (*i.e.*, no gratuities were received) until July 19, 2006, so that there could not possibly be any violation alleged before such date.

Plaintiff also seeks an Order from the Court requiring Defendants to "produce within ten days of its Order a computer-readable list of all non-managerial, tipped employees who were employed at Japonais at any point in the three years prior to the entry of the Order with the following information: name, last known mailing address, alternate address (if any), all known telephone numbers, Social Security number and dates of employment." (Pl. Br. at 14).

The dissemination and use of such information (especially social security numbers) is protected by a panoply of state and federal laws. *See, e.g.,* Section 203(d) of the New York Labor Law, NY GBL § 399-h(2)(a) (2009), 18 U.S.C. §§ 2721-2725. There is simply no legitimate reason for Plaintiff to possess this information. *See Chowdhury v Duane Reade, Inc.*, 2007 WL 2873929, at *2 (S.D.N.Y. Oct. 2, 2007).

Instead, this Court has determined that class disclosure should be limited to disclosures of names and last known address. *See Krueger v. New York Telephone Co.*, 1993 WL 276058, *3 (S.D.N.Y. 1993) (only putative class names and last known addresses disclosed); *Masson v. Ecolab, Inc.*, 2005 WL 2000133, *16 (S.D.N.Y. 2005). Defendants should be required to disclose only names and last known addresses of the FLSA putative class. While Plaintiff asserts that notices may be returned without having social security numbers, this is hardly reason to require the production of such legally protected personal information, before a single notice has even been sent out. Moreover, there is no reason why Plaintiff must have all of the requested information within ten days of any Order by the Court. In fact, where as here, Plaintiff has not met the requirements necessary for conditional certification, the Court "can refuse to authorize notice or postpone the issue pending further discovery and motion practice." *Amendola*, 558 F.Supp.2d at 467.

## IV.   CONCLUSION

As set forth above, Plaintiff has failed to meet the standards necessary for conditional certification of a collective action or to justify a wide-ranging notice to all current and former hourly employees of Japonais. Accordingly, the Court should deny Plaintiff's motion in its entirety.

Dated: New York, New York
       July 14, 2009

LITTLER MENDELSON, P.C.

By:   s/ A. Michael Weber
      A. Michael Weber
      Barbara A. Gross
      Diana Nance
      900 Third Avenue
      New York, New York 10022
      Tel:  (212) 583-9600
      mweber@littler.com
      bgross@littler.com
      dnance@littler.com

      Attorneys for Defendants